**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**APR 22 2003**

**PATRICK FISHER**
**Clerk**

DONA CLARK,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

        Defendant-Appellee.

No. 02-5093
(D.C. No. 01-CV-520-J)
(N.D. Okla.)

**ORDER AND JUDGMENT** *

Before **LUCERO** , **McKAY** , and **BALDOCK** , Circuit Judges.

Plaintiff Dona Clark asserts she has been disabled since February 1998 due

to multiple sclerosis. Here, she appeals the district court's decision [1] upholding

---

* The case is unanimously ordered submitted without oral argument pursuant
to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

[1] In the district court, the parties consented to have a magistrate judge decide
this case and waived their right to have the district court review any such
decision. 28 U.S.C. § 636(c)(3).

the Commissioner's denying her disability benefits.  The administrative law judge (ALJ) determined, at step five of the relevant analysis, that Clark remains capable of performing such sedentary jobs as clerical mailer and production assembly worker.  The Appeals Council then denied review, making the ALJ's determination the Commissioner's final decision.  Reviewing to determine whether there is substantial evidence to support the ALJ's decision and whether the ALJ correctly applied the law,    see Grigsby v. Barnhart  , 294 F.3d 1215, 1218 (10th Cir. 2002), we reverse that determination and remand this cause for the Commissioner's further consideration.

No one disputes that Clark has met the first two steps of the five-step disability analysis,   see 20 C.F.R. § 404.1520.  The ALJ found both that Clark has not performed substantial gainful activity since February 1998 and that she suffers from a severe impairment, multiple sclerosis.  "At step three, [then,] the ALJ [must] determine[] whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity."       Drapeau v. Massanari  , 255 F.3d 1211, 1212 (10th Cir. 2001) (quotation omitted).  Clark asserts she met her burden,  see id. at 1213, by establishing that she satisfied the multiple sclerosis listing,  see 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09.  Although this listing

2

provides three different means by which a claimant can establish that she is disabled, Clark invokes only two of those three sections, id. § 11.09(A) & (C).

Listing 11.09(A) provides that a claimant suffering from multiple sclerosis will be presumptively disabled if she suffers "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." Id. § 11.04(B), incorporated into § 11.09(A). The ALJ found, however, that Clark's condition was not sufficiently severe to meet this listing, in light of her continued ability to walk with a cane, drive long distances, and perform household chores. Nonetheless, Clark asserts that the ALJ, in making this step-three determination, should not have considered such nonmedical evidence.

In making a step-three determination, the ALJ must rely on only medical evidence, without considering vocational factors such as age, education and work experience. 20 C.F.R. § 404.1520(d); see also, Hargis v. Sullivan, 945 F.2d 1482, 1487 (10th Cir. 1991); Davidson v. Sec'y of Health & Human Servs., 912 F.2d 1246, 1253 (10th Cir. 1990) (addressing claim for widow's disability benefits). Nonetheless, the ALJ may properly consider the claimant's residual functional capacity (RFC) when making this medical determination under step three. Id. And, because a claimant's RFC "consists of those activities that [she] can still perform on a regular and continuing basis despite . . . her physical limitations,"

3

White v. Barnhart, 287 F.3d 903, 906 n.2 (10th Cir. 2001), the ALJ did not err in relying upon this evidence to make his step-three determination.

Furthermore, substantial evidence supported the ALJ's decision that Clark did not meet Listing 11.09(A). And the ALJ provided a sufficient analysis supporting that determination. Cf. Drapeau, 255 F.3d at 1213 (holding ALJ had failed to address properly whether claimant met listing); Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996) (same).

Clark further faults the ALJ for failing even to consider whether she met Listing 11.09(C). The multiple sclerosis listing, however, provides that the ALJ should apply either § 11.09(A) or, instead, § 11.09(C), but not both. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(E). "Paragraph C provides criteria for evaluating the impairment of individuals who do not have muscle weakness or other significant disorganization of motor function at rest, but who do develop muscle weakness on activity as a result of fatigue." Id. If, instead, "the disorganization of motor function is present at rest, paragraph A must be used, taking into account any further increase in muscle weakness resulting from activity." Id. Clark has never argued that § 11.09(A) does not apply to her case. In fact, Clark's attorney specifically asserted to the ALJ that Clark was disabled under § 11.09(A). (2 R. at 169.) The ALJ, therefore, did not err in failing also to consider § 11.09(C). In any event, the record does not support a finding that Clark has met Listing

4

11.09(C).  Cf. Barnett v. Apfel , 231 F.3d 687, 689 (10th Cir. 2000) (refusing to disturb ALJ's decision denying benefits, where claimant failed to direct court to any evidence that ALJ disregarded that established his disability).

Next, Clark challenges the ALJ's determination that she retained sufficient RFC to perform sedentary work, as further limited by her ability to lift only five pounds occasionally and three pounds frequently.  Substantial evidence supports this determination as to Clark's exertional limitations.  Nonetheless, the ALJ also had to consider any other limitations Clark may have, such as the chronic disabling fatigue of which she complains.  Objective medical evidence established that Clark suffers from multiple sclerosis, which can reasonably be expected to produce the fatigue Clark alleges.   See 20 C.F.R. § 404.1529(b);  see also Young v. Apfel, 221 F.3d 1065, 1067 n.3 (8th Cir. 2000) (noting multiple sclerosis's symptoms "include muscle weakness, numbness, fatigue, loss of balance, pain, and loss of bowel and bladder control").  Therefore, the ALJ should have considered her subjective complaints of chronic fatigue in light of all of the evidence.  20 C.F.R. § 404.1529(c).

In this case, however, the ALJ never specifically considered Clark's allegations of fatigue at all.  And, while the ALJ did discount Clark's "allegations of pain, and  other limitations ," (2 R. at 22) (emphasis added), here, that analysis alone is inadequate to disregard her complaints of chronic disabling fatigue.    See,

e.g., White, 287 F.3d at 909 (holding ALJ must give specific reasons why he rejects claimant's subjective pain complaints); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (noting administrative agencies have to give reasons for their decisions).

Even if we could deem the ALJ's passing reference to Clark's "other limitations" to have included her complaints of chronic fatigue in his credibility analysis, the ALJ's reasons for disregarding Clark's subjective complaints are still insufficient here to discount her allegations of fatigue.

First, the ALJ rejected Clark's subjective complaints of "other limitations" based on "the objective findings, or the lack thereof, by treating and examining physicians, the lack of medication for severe pain, the frequency of treatments by physicians and the lack of discomfort shown by the claimant at the hearing." (2 R. at 22.) This analysis is insufficient to discredit Clark's complaint of disabling chronic fatigue primarily because it focuses instead on pain. Two of the four factors upon which the ALJ relied, Clark's lack of any severe *pain* medication and her apparent comfort during the hearing, expressly focused on any pain allegations and did not address her fatigue complaints.

As for the ALJ's other two factors, while Clark had not seen her treating physician in the six months preceding her hearing, she had seen her treating physicians over ten times in the year and a half before that. And, during these

6

visits, she had complained of fatigue. Cf. Barnett, 231 F.3d at 690 (upholding ALJ's discounting claimant's pain allegations where, among other reasons, claimant had not reported such complaints to treating physician, whom claimant had not seen in nine months preceding hearing). Additionally, Clark testified that she sought medical treatment only when her multiple sclerosis flared up. This, however, is consistent with the episodic nature of her illness. See Wilcox v. Sullivan, 917 F.2d 272, 277 (6th Cir. 1990) (requiring ALJ to consider multiple sclerosis's episodic nature).

Furthermore, in discounting Clark's subjective complaints of pain and "other limitations," (2 R. at 22), the ALJ relied heavily on Clark's testimony concerning her daily activities, which the ALJ deemed "fairly strong," (id. at 23). In fact, those daily activities, instead, support Clark's allegations of disabling fatigue. Although Clark did testify she was able to make her bed, this amounted only to pulling up the comforter. And while she was able to shower and dress herself, it would take her two hours to do so and she would have to rest during the process. She could also dust and mop her floors, but only if she rested periodically. And Clark testified she could do the laundry if her husband carried the clothes to and from the laundromat. Clark did assert she remained able to wash dishes and cook meals, and she could grocery shop if she leaned on a grocery cart to move about the store. She exercised by doing leg lifts and

7

stretches, but only because she could lie down while doing them. And she attended church, went out socially with her husband once a week and listened to music. By themselves, these activities would not support the ALJ's discreditation of Clark's complaints of chronic and disabling fatigue. See Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). "The sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) (further quotation omitted; alteration in original). Neither would her one-time drive from New Jersey to Oklahoma to attend her Social Security hearing. See Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).

So, even if we could conclude that the ALJ's brief reference to Clark's "other limitations" included her complaints of disabling chronic fatigue, the record does not contain substantial evidence supporting the ALJ's reasons for rejecting those complaints. See McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002) (holding ALJ's credibility determination must be closely linked to substantial evidence). Because the ALJ did not adequately consider Clark's complaints of chronic fatigue, therefore, we must reverse the Commissioner's decision denying disability benefits and remand this case for the Commissioner's further consideration. See Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000)

(remanding where ALJ ignored claimant's allegations of severe fatigue, weakness and swelling, which her condition would reasonably be expected to produce).

In addition, while the ALJ did, at step five, credit Clark's testimony that she could read very little, the ALJ did not further address her blurred vision and diminished vision acuity. Yet her medical records clearly reflect diminished visual acuity and include her consistent complaints of blurred vision. Cf. Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990) (holding ALJ had not erred in discounting claimant's complaints of blurred vision where there was no corroborative objective evidence).

On remand, therefore, the Commissioner should consider whether Clark's complaints of chronic fatigue are credible. If so, the Commissioner should then further consider the effect her chronic fatigue, as well as her blurred and diminished vision, had on her ability to perform work activity. Finally, these additional impairments, to the extent the Commissioner concludes they are credible, must be reflected in any hypothetical question posed to the vocational

expert. We, therefore, REVERSE and REMAND this case to the district court with instructions to remand it to the Commissioner for her further consideration consistent with this decision.

Entered for the Court


Carlos F. Lucero
Circuit Judge