**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RITA M. WEBSTER,

Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

Defendant-Appellee.

No.  05-5170
(D.C. No. 04-CV-450-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BRISCOE**, and **LUCERO**, Circuit Judges.

Rita M. Webster appeals from a district court order affirming the

Commissioner's denial of her application for disability insurance benefits.

---

[*]  After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we **REVERSE** and **REMAND** for further proceedings.

Webster applied for benefits in January 2002, alleging she had been disabled since August 2001. After conducting a hearing at which both Webster and a vocational expert (VE) testified, the administrative law judge (ALJ) issued a decision finding that Webster, who was then 56 years old, suffered from fibromyalgia, chronic fatigue syndrome, osteoarthritis, bursitis, gastroesophageal disease, and depression, that these impairments were severe, and that they prevented her from performing her past relevant work as a social worker. Based on the VE's testimony, the ALJ found, however, that Webster had certain transferable skills that would permit her to perform other jobs in the national economy, namely the semi-skilled, sedentary jobs of appointment clerk and information clerk. The ALJ therefore concluded at step five of the sequential analysis that Webster was not disabled.[1] When the Appeals Council later denied her request for review, the ALJ's decision became the final decision of the Commissioner.

---

[1] This analysis evaluates whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant has a medically severe impairment or impairments, (3) the impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation, (4) the impairment prevents the claimant from performing his or her past work, and (5) the claimant possesses a residual functional capability (RFC) to perform other work in the national economy, considering his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4) (2003); see also Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." Nielson v. Sullivan, 992 F.2d 1118, 1119 (10th Cir. 1993) (brackets and internal quotation marks omitted).

Webster raises two challenges to the ALJ's step five determination. First, she contends that the ALJ failed to apply the correct legal standards and make the necessary findings in determining that she could make a successful vocational adjustment to the two sedentary jobs identified by the VE and relied on by the ALJ. Second, she contends that the ALJ failed to explore an inconsistency between the VE's description of the requirements of the two jobs and the descriptions of those requirements contained in the Dictionary of Occupational Titles (DOT).[2]

At the time of the ALJ's decision, Webster was 56 years old, which made her a person of "advanced age." 20 C.F.R. § 404.1563(e). The regulations "consider advancing age to be an increasingly limiting factor in [a] person's ability to make . . . an adjustment [to other work]." 20 C.F.R. § 404.1563(a). "[A]t advanced age (age 55 or older) age significantly affects a person's ability to

_____

[2] U.S. Dep't of Labor, Dictionary of Occupational Titles, (4th ed. 1991).

-3-

adjust to other work." 20 C.F.R. § 404.1563(e). Accordingly, if a claimant is of advanced age and is limited to only light or sedentary work, the claimant will be considered unable to make the adjustment to other work at step five of the sequential analysis unless the claimant has acquired skills in her past work that she can transfer to other skilled or semiskilled jobs that she can perform despite her limitations. 20 C.F.R. § 404.1568(d)(4).

In this case, the ALJ found that Webster had a residual functional capacity (RFC) for a limited range of light work. The VE identified only sedentary jobs for which Webster had transferable skills, and the ALJ relied on only sedentary jobs in finding Webster was not disabled. Because the ALJ based the denial of benefits on Webster's ability to perform other sedentary jobs that exist in significant numbers in the national economy, the parties agree that the regulations governing claimants of advanced age who are limited to sedentary work govern this case.

Those regulations provide that if an advanced age claimant is limited to only sedentary work, the ALJ can find that claimant's skills transferable to skilled or unskilled sedentary work "only if the sedentary work is so similar to [the claimant's] previous work that [the claimant] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." Id. More particularly, "the semiskilled or skilled job duties of [the claimant's] past work must be so closely related to other jobs which [the

-4-

claimant] can perform that [the claimant] could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." Soc.Sec. Ruling 82-41, [March 1982-Feb. 1983 Transfer Binder] Unempl.Ins.Rep. (CCH) ¶ 14,168 at 2199-46 (July 1982).

Accordingly, the ALJ's decision here cannot be upheld unless he appropriately put the burden on the Commissioner to establish not only that Webster had skills that she could transfer to the two jobs identified, but that the two jobs were so similar to her past work that she could be expected to perform them at a high degree of proficiency with minimal job orientation. Neither the record nor the ALJ's decision reflect that he appropriately placed this more stringent burden on the Commissioner at step five.

First, "the ALJ never raised with the vocational expert the significance of [the claimant's] advanced age and the resulting vocational adjustment issue." Nielson, 992 F.2d at 1121. The only exchange between the ALJ and the VE concerning Webster's age was as follows:

ALJ: "And these jobs would be available regardless of age?"

VE: "Yes, Your Honor, for a person that has the claimant's vocational background."

ALJ: "All right. And hypothetically assume a person at the time of becoming impaired or disabled was approximately 54, is currently about 55, these jobs would apply."

VE: "Yes, sir."

While the Commissioner characterizes this exchange as demonstrating that "[t]he ALJ specifically questioned the vocational expert about the significance of Webster's age to her ability to perform the jobs of information clerk and appointment clerk," the ALJ's questions did not in fact suggest that Webster's age had any particular legal significance. He mentioned two different ages, one of which was in the advanced age category (55) and one of which was not (54), and did not indicate which one the VE should use for purposes of his opinions. Further, the ALJ did not ask the VE any questions designed to elicit information about the level of vocational adjustment that would be necessary for Webster to perform the jobs of information clerk and appointment clerk given her past work as a social worker. Cf. Jensen v. Barnhart, 436 F.3d 1163, 1168 (10th Cir. 2005) ("[T]he ALJ carefully led the VE through the regulatory requirements for transferability of skills for a person of advanced age.").

In Nielson, we held that "[w]hen the transferability of skills arises with respect to a claimant of advanced age, the ALJ must present the vocational expert with a hypothetical that asks whether or not the skill is transferable with little or no vocational training or job orientation." 992 F.2d at 1121. The ALJ did not do this: His questioning of the VE simply did not address the legal significance of Webster's age and the concomitant burden it placed on the Commissioner.

Further, we cannot uphold the ALJ's ruling on the ground that there is evidence in the record that supports his finding that Webster could perform the

jobs of appointment clerk and information clerk with very little, if any, vocational adjustment. The ALJ did not actually make such a finding. We have held that an ALJ must "make findings specifically targeted at the level of vocational adjustment needed for [the claimant] to enter potential [identified] positions, as required by Social Security Ruling 82-41." Nielson, 992 F.2d at 1121-22; see also Dikeman v. Halter, 245 F.3d 1182, 1188 (10th Cir. 2001) (holding that the ALJ must make findings on remand about vocational adjustment required for claimant who had since reached advanced age to perform other semi-skilled jobs); cf. Jensen, 436 F.3d at 1166 (discussing ALJ's finding about overall vocational adjustment necessary for claimant to perform other jobs).

The ALJ here did not make the required specific findings. He made only the very general finding that "[b]ased on the testimony of the vocational expert, the undersigned concludes that considering the claimant's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy." That the record contains evidence that may support a specific factual finding cannot substitute for the finding itself. Allen v. Barnhart, 357 F.3d 1140, 1144-45 (10th Cir. 2004). "[W]e are not in a position to draw factual conclusions on behalf of the ALJ." Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001) (internal quotation marks omitted).

Finally, even if we could rely on the VE's testimony absent specific findings by the ALJ, the VE's testimony itself fails to support the ALJ's findings. The VE's testimony about vocational adjustment was both minimal and circular. He testified that Webster had transferable skills because of her college degree and her "extensive experience in interviewing and providing information, reports, and so forth." Then, when asked by Webster's counsel whether there would be much vocational adjustment to the appointment clerk and information clerk jobs, the VE testified that there would not be because Webster "is a college educated person" and "has had extensive experience in dealing with the public, obtaining information for reports and these [other jobs] are below even the past skill level that she performed." Rather than shed light on the similarities between her past work and the identified jobs and on the vocational adjustment necessary for her to perform those jobs, this testimony merely repeated the source of Webster's transferable skills. It would be difficult, on the basis of this testimony, to determine Webster's RFC to perform other work.

Because the record before us does not demonstrate that the ALJ applied the correct legal standards and because he failed to make the necessary factual findings concerning vocational adjustment, we must reverse his step five determination and remand for further proceedings.[3]

---

[3] Webster contends that the ALJ committed further error by failing to explore and elicit a reasonable explanation for an apparent conflict between the VE's

(continued...)

Accordingly, we **REVERSE** the judgment of the district court and

**REMAND** the action to the district court with directions to remand to the

Commissioner for further proceedings consistent with this decision.


Entered for the Court


Carlos F. Lucero
Circuit Judge

---

[3](...continued)
testimony about the reasoning requirements of the information clerk and
appointment clerk jobs and the DOT's descriptions of those requirements. The
VE's testimony is too ambiguous to discern its precise meaning and, therefore, it
is impossible to determine whether there is a conflict between his testimony and
the DOT. Because the ALJ must elicit further vocational testimony on remand, he
can clarify the VE's intent in using the terms "quite simplistic, one, two steps"
and "not a complex requirement, but basic" to describe the jobs, and, if that
clarification reveals a conflict with the DOT, the ALJ can then solicit an
explanation for the conflict.